Hale v. Richards.

---

HALE v. RICHARDS *et al.*

**Banks and Banking**: OVERDRAFTS : PAYMENT WITH FUNDS HELD IN TRUST. Plaintiff was the vice-president and manager of a bank of which defendant was president and owner of nearly all the stock. Plaintiff kept a regular depositor's account between himself and the bank. He was also treasurer of a school district, and, with the knowledge, consent and encouragement of defendant and the other officers of the bank, he deposited the school funds as his own. Plaintiff purchased a homestead, and paid for it by drafts upon his bank account in excess of his deposits, but at a subsequent date

Hale v. Richards.

his deposits, including the school funds, made a balance to his credit in the bank. At a still later date, however, upon settlement with the bank, he was found to be its debtor, and he gave his note for the indebtedness, which note was assigned to defendant and prosecuted to judgment, and for the satisfaction of the judgment he sought to sell plaintiff's said homestead, on the ground that the note was given for money used in its purchase, and plaintiff in this action seeks to enjoin such sale. *Held*—

(1) That, since the overdrafts made to pay for the homestead were paid by deposits made before the indebtedness for which the note was given arose, it could not be said that the note was given for money used in paying for the homestead ; and, therefore, the sale was properly enjoined.

(2) That, since defendant and the other officers of the bank knew that a large part of plaintiff's deposits were school funds, but they made no objection to his depositing them as his own, but rather encouraged it, defendant could not, for the purpose of collecting his note, be heard to insist that the money with which plaintiff paid his overdrafts was not his own, and that he should not have credit therefor.

(3) That, even if plaintiff had used the money of the bank without its consent in purchasing the homestead, and he should, therefore, be regarded as holding it in trust for the bank, yet his trust was settled and discharged when he paid his overdrafts, even with the school money.

*Appeal from Mahaska District Court.*—HON. J. K. JOHNSON, Judge.

FILED, MAY 19, 1890.

ACTION in chancery to restrain defendants from enforcing a judgment upon the homestead of plaintiff. The relief prayed for by plaintiff was granted by the decree of the district court, from which defendants appeal. The facts fully appear in the opinion.

*McNett & Tisdale*, for appellants.

*J. F. & W. R. Lacey*, for appellee.

BECK, J.—I. In 1871 the plaintiff became the vice-president and manager of the National State Bank of Oskaloosa. Defendant Seth Richards owned all the

stock of the bank, except thirty shares, which he had transferred to qualify directors. He was also, and continued to be, president of the bank, but took personally no active part in its management, subsequent to plaintiff's connection with it, being for many years in infirm health, and residing in another, distant state. When plaintiff became connected with the bank, Mr. Richards agreed to sell to him one hundred and forty-five shares of the bank stock by a written contract between the parties, which provides that plaintiff shall pay one hundred and fifteen dollars per share for the stock, and all taxes levied on it, and protect Richards from all losses that may occur in connection with the stock, and pay ten per centum each year, semi-annually, on the par value of the stock. Richards is to pay to plaintiff the dividends on the stock in excess of the ten per centum to be paid by plaintiff to him. The stock is to be paid for and transferred in three years from the date of the execution of the agreement. At the time plaintiff became connected with the bank he owned some real estate and a dwelling in Ottumwa, occupied as a homestead. He probably had some other property, of no great value. Mr. Richards had long known him, and, as we understand the evidence, had employed him from 1852, or at least had business connections with him from that date, until he became manager of the bank. Not long after he had removed to Oskaloosa to take charge of the bank he purchased a house and lot, which from the time of its purchase was occupied by him as a homestead. About a year after the purchase he bought another lot adjacent to the first, which was attached to and used as a part of his homestead property. Payments were made for these lots with money obtained from the bank, and charged to plaintiff's account, and probably in some instances checks and other memoranda were executed by plaintiff, and deposited in the bank, and carried by it as cash items. The transactions were known to the officers of the bank, and were had after plaintiff explained his plan of buying a homestead of

Mr. Richards, and obtained his consent to make payments therefor in the manner just indicated. The amounts and dates of these payments need not be stated. It is not to be questioned that the main part, if not the whole, of the money used in payments for the homestead came through the bank. Plaintiff kept an account in the bank, and made deposits therein of money received from all sources ; as from salary, rents, sales of property, etc. He was, from about the time he became vice-president of the bank, the treasurer of the independent school district in which he lived, and as such handled and was charged with the custody of considerable sums of money, which were deposited and entered in his individual account in the bank. These facts were known to Mr. Richards and the other officers of the bank. Mr. Richards states in his testimony touching the matter that, "in making up the interest on overdraft account, and Hale's account on the books of the bank, the independent school-district moneys were treated as belonging to Hale individually, and Hale had the same benefit of it as he would have had if it had been his own money." Large sums were paid as dividends upon the stock contracted for and purchased by plaintiff of Mr. Richards, and credited to plaintiff's stock account.

It cannot be doubted that the payments made by plaintiff for his homestead exceeded the balance of money belonging to himself individually, which he deposited in the bank, and excluding therefrom the money of the school district deposited by him, and it is equally clear that the total of his balances, including his individual money and the school money, exceeded the sum paid for the homestead property,—that is, when such payments were made they were at the time or subsequently exceeded by deposits made by plaintiff, including the school money. We think this proposition of fact is denied by neither party. Defendants claim that plaintiff from the first owed the bank for money obtained by him therefrom to pay for the homestead,

and that it is, therefore, liable to be sold upon the judgment sought to be enforced by plaintiff, for the reason that it was rendered upon a note given to secure the payment of the debt incurred by plaintiff to the bank by overdrafts, or advances by the bank in other forms. In support of this proposition, defendants insist, as a matter of fact and of law, that the plaintiff's deposits were made up largely of school money, for which he can receive no personal benefit, and for which he can receive no credit in determining the amount of money he had on deposit. Plaintiff insists, on the other hand, that his balances of deposits, including the school money, exceeded the sums drawn by him from the bank in making payments for his homestead. The determination of the issue thus presented will prove decisive of the case, in the view we take of it.

It may be stated here that, in the settlement of the interests of the plaintiff and Mr. Richards growing out of the business of the bank, and the contract for the sale of stock, above referred to, plaintiff was found indebted to the bank, and for the amount of such indebtedness he executed the note to the bank upon which the judgment sought to be enforced against plaintiff's homestead was rendered. This note, in the reduction of the stock of the bank, was transferred to Mr. Richards. We may say here that we find it unnecessary to enter into an investigation of the affairs of the bank, which, under plaintiff's management, were not successfully terminated, on account of the embezzlement of a large sum by the cashier, which swallowed up surplus or dividends to which plaintiff was entitled, and put it out of his power to pay the bank. And we find it unnecessary to make a minute examination of plaintiff's bank account, which appears in the record, and to pursue inquiries as to other matters disclosed by the testimony. It is sufficient, in order to reach a conclusion in the case, to consider the fact which we have above announced, viz., that plaintiff had balances in his favor, including the school money deposited by him, at certain times

after the money of the bank was appropriated to the payments for the homestead; that is, the money of the bank used by plaintiff in payment for the homestead was repaid by subsequent deposits, which gave a balance in plaintiff's favor.

II. The transactions between a bank and its customer, who is a depositor, consist of debits and credits. The bank is a debtor for all moneys deposited. The customer is charged with all moneys checked out of, or drawn from, the bank. When a balance is struck between the accounts, the party is the debtor against whom the balance is found. He owes the other the amount of that balance, and stands charged therewith. If subsequently he deposits a sum in excess of the balance and of other checks, if there be any, he ceases to be a debtor, and becomes a creditor of the bank. It is plain that a customer of a bank, who has made overdrafts, may pay them by deposits, and, when they are so covered, he ceases to be a debtor to the bank; but, if the deposits so made exceeds his overdraft, he is a creditor of the bank in the amount of such excess. It cannot be doubted that if plaintiff had, in the place of the school money, made deposits of money of his own which exceeded his own overdrafts before made, his indebtedness arising from the overdrafts would have been paid. So successive overdrafts would have been paid by successive deposits in excess thereof, and each new overdraft would be a new debt, dating from the day the overdraft was made.

III. But the deposits made by plaintiff did not consist wholly of his own money. A large part of it was school money, which he held as a public officer. Defendants insist, correctly enough, that plaintiff had no property in the school money. They further maintain that the deposit in the bank of the school money in his own name was a conversion thereof, and the use of it, under the statute of the state, would amount to embezzlement, and be punishable as such; and that plaintiff, therefore, can have no benefit of such deposit

in this suit.   The general proposition of law that the deposit in his own name of the school money, by a school treasurer, amounts to a conversion thereof, and is an embezzlement, we are not prepared to admit, and need not discuss.   If such a deposit were made, without the intention of using or converting the money, and for the purpose of its safe keeping, it would hardly be held to constitute embezzlement.   But if its deposits were made for the purpose of gain by the school treasurer, by obtaining a credit thereby upon his bank account, which would operate as payment of overdrafts by him, it may be assumed, for the purpose of this case, that the treasurer would, in law, be guilty of embezzlement in the absence of conditions which would remove the case from the operation of this rule.

IV.   In the case before us, the undoubted fact is that the deposit of the school money, and the credit thereby obtained, was fully known and assented to, if not encouraged, by the bank.   Mr. Richards testifies, as we have heretofore stated, that the bank, in making up the interest on overdrafts in Hale's account, treated the school money as though it were the plaintiff's.   No objection in any form was made to the use, by plaintiff, of the deposit of school money as his own.   Indeed, the bank itself made that use of it, and received the benefit of the money just the same as it did of other moneys deposited by the plaintiff.   No attempt at any time was made to correct the practice of the parties as to this school money, and not a word of complaint touching it was ever made.   The plaintiff continued practicing it, and was thereby encouraged to repeat the overdrafts of his accounts.   He felt the temptation which is always experienced by men of limited means who have the custody and use of money not their own.   They forget that they are debtors to the fund of which they are trustees, and use the money as their own, without the thought of the approaching hour of final payment. When that perplexing and trying hour did come to plaintiff, his creditor, who knew of the use of the trust

money, who encouraged it, and who received advantages therefrom, objected to regarding it as payment on the bank account, though in prior accounting, when the bank account was balanced, and interest on overdrafts was charged, the bank treated the school money as the individual money of plaintiff. Surely it is now too late for defendants, who stood in the shoes of the bank, to base a claim for relief upon plaintiff's violation of law. It must be remembered that Mr. Richards does not base his claim on the ground that any loss resulted to the school district, or that plaintiff failed to account to the school district for money used by him, which it has been held is necessary to constitute the crime of embezzlement. *State v. Parsons*, 54 Iowa, 405; *State v. Brandt*, 41 Iowa, 600. Nor does he claim that he or the bank in any way suffered prejudice from plaintiff's acts in connection with the school money.

Mr. Richards becomes a vindicator of violated law, not to correct any wrong or reimburse loss suffered by any one, but solely to enforce a remedy for his own benefit, by regarding the acts of plaintiff as unlawful, which the bank, in whose shoes he stands, encouraged, and in which it participated. The plaintiff, the bank, and Mr. Richards, as its assignee, representative and beneficiary, as to the violation of the law in the use of school money, stand *in pari delicto*. Mr. Richards cannot now invoke that violation of law as a ground for a remedy against his debtor. These views are based upon familiar rules of the law and of equity, which do not demand for their support citation of authorities. They are everywhere admitted.

V. Counsel for defendants insist that, as plaintiff used the money of the bank without the consent of the directors, that use was without authority, and he, therefore, became a trustee for the bank as to that money, and the equitable title of the property he acquired with it was held by the bank until it was voluntarily relinquished by the recognition of the transaction as creating a debt by the execution and

acceptance of the note, which is the foundation of the judgment upon which defendants seek to sell the homestead. But there are two insuperable objections to this position. The first is that the fact, inferentially assumed, that plaintiff used the money without consent of the bank, is not sustained by the evidence. Mr. Richards, who was president of the bank, and owner of the larger part of the stock, assented to plaintiff's use of the money. The other objection is that if plaintiff, in taking the money of the bank, became a trustee, his trust was settled and discharged in his payments of his overdrafts by the deposits of the school money. Money held in trust may be paid as money due on a debt. We reach the satisfactory conclusion that the decree of the district court ought to be                AFFIRMED.